# Hanna Webster v. William Cotrofeld

[460 A.2d 463]

No. 394-81

Present: Barney, C.J., Billings, Hill, Underwood and Peck, JJ.

Opinion Filed April 5, 1983

*Rhys Evans,* Manchester Center, for Plaintiff-Appellee.

*Charles R. Eichel,* Manchester Center, for Defendant-Appellant.

**Barney, C.J.** The plaintiff Webster brought this suit to recover $802.32 paid out to release her car from the custody of the defendant Cotrofeld, where it was being held to retrieve charges for repair work. The complaint alleged that the work was both unauthorized and unaccomplished. The trial court agreed and awarded the plaintiff $802.32 plus interest and costs.

Both sides waived findings of fact. The defendant contests the result in this Court, arguing that the conduct of the parties established an implied-in-fact contract and that the trial court was in error in not setting out an amount in offset

against plaintiff's claim representing work, labor, services and parts furnished by the defendant.

The circumstances of the case as disclosed by the record reveal that the plaintiff drove to Vermont from her residence in Newburyport, Massachusetts, in her 1976 Dodge Aspen with her fiance to visit her sister in Middlebury in November, 1980, without incident. Her fiance and her brother-in-law were going deer hunting on that weekend. On Saturday the car could not be made to start. The two men decided Sunday would be soon enough to try to get it going and continued their hunting. On Sunday the brother-in-law went to the defendant's gasoline station to borrow a spark plug wrench to remove the plugs after the defendant had suggested the car might only be flooded. Drying the plugs did not help, and on having the wrench returned the defendant suggested the car be brought down on Monday, the next day.

The car was in fact towed to the station by the two men. The defendant indicated that he still thought flooding might be the trouble, that he would look at it that afternoon and report by phone what he found. Tuesday the brother-in-law called and was told some tests had been run that drained the battery and the car was not ready. The following day the fiance called and got a report that there was no progress in determining the problem. A week went by and the brother-in-law stopped by the station. He was confronted by a statement that the defendant already had a thousand dollars worth of parts and labor in the car, but it was not repaired. He immediately informed the defendant that the defendant had better call the plaintiff.

On the first weekend in December the defendant called the plaintiff to say the car was ready and that the bill was $592.83. The fiance came to pick up the car. He paid for the car by a check supplied to him by the plaintiff. The car was running, but after gas was put in, it stalled and could not be restarted.

The defendant then gave back the check for $592.83, took back the bill and said he would not release the car. He said he was going to truck it to Albany, presumably to have a Chrysler garage work on it. The fiance objected, told the defendant not to send it to Albany and instructed him not to

do any more work on it. By the time the fiance returned to the filling station with the brother-in-law to pick up the car, it was gone, apparently to Albany. The fiance told defendant to get the car back. He could not stay to see that done since he had to return to Massachusetts.

On the day after Christmas the brother-in-law was notified that the car was ready and the new bill was $802.32. The money was wired from Newburyport and he went to get the car. It was running in the yard when he picked it up, so he left the money and drove it to his home in Manchester. As he made his way home, the car appeared to hesitate on steeper grades.

The next day he was to drive it to Newburyport to deliver it. He got about two miles and could barely get up a grade at full throttle, so he returned home. The next weekend the car was towed to Massachusetts, where a Chrysler dealer repaired it for $41.40, and the car ran properly thereafter. During the development of the evidence in the case the plaintiff's witnesses consistently said that the defendant, when inquired of, reported that he was testing the vehicle to find the trouble. Much of the bill consisted of new parts such as starter, carburetor, timing chain, distributor, cam shaft gear and electronic control unit, none of which were ever authorized, according to the testimony.

■ Enough has been said to indicate that there was support from which the trial court could conclude that there was no authorization for the work done or the rebuilt parts installed. Since findings of fact were waived, we are free to support the result if the record discloses that the facts underlying the result, if they had been put into formal findings, would not be clearly erroneous. *Lanphere* v. *Beede*, 141 Vt. 126, 128, 446 A.2d 340, 341 (1982). Certainly an appellant in a case where findings are waived is not entitled to a more searching review of the factual underpinnings of the result than one who has asked for findings.

■ With respect to the defendant's claim here that the lower court should have given some recognition by way of credit for labor done and parts installed, we note that no such claim of any kind was advanced in the pleadings, with or

without reference to V.R.C.P. 13. Moreover, there is no support for this claim in the evidence.

*Judgment affirmed.*